UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) | Case No. 12 C 878 |
| 1347-49 NORTH SEDGWICK CONDOMINIUM ASSOCATION, ANDREW HOWARD, KETAN PATEL, NOEL SMITH, and THE KENNEL LTD., ) ) ) ) ) ) | Judge John W. Darrah |
| Defendant. ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cambridge Mutual Fire Insurance Company ("Cambridge") filed a Complaint for Declaratory Judgment against Defendants 1347-49 North Sedgwick Condominium Association (the "Association"), Andrew Howard, Ketan Patel, and Noel Smith (collectively, the "Defendants"), seeking a declaration that it has no obligation to provide coverage under its insurance policy issued to the Association. Cambridge has filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendants filed a Cross Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## BACKGROUND

Cambridge is a Massachusetts insurance corporation, which maintains its principal place of business in Andover, Massachusetts. (Compl. ¶ 3.) The Association is an Illinois not-for-profit corporation, which maintains its principal place of business in

Chicago, Illinois. (*Id.* ¶ 4.) Howard, Patel, and Smith (collectively, the "Managers") are each citizens of the State of Illinois and residents of Chicago, Illinois, and each is a member of the Board of Managers. (*Id.* ¶ 5.) Kennel Ltd. ("Kennel") is the plaintiff in an underlying action brought against Defendants in Cook County Circuit Court.[1] (*Id.* ¶ 6.) Cambridge does not seek relief against Kennel but named Kennel as a Defendant so Kennel will be bound by any judgment. (*Id.*) This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

Cambridge issued a policy of insurance to the Association, which provided Businessowners Liability Insurance for the effective period January 8, 2010 to January 8, 2011 (the "Cambridge Policy"). (Compl. ¶ 7.)

On August 11, 2011, Kennel filed a three-count complaint against the Association and its managers in the Circuit Court of Cook County, Illinois, Case No. 11 CH 27183 ("*Kennel* Complaint"). The underlying *Kennel* Complaint alleges Kennel owns a commercial unit in a condominium building located at 1347 North Sedgwick in Chicago. (*Kennel* Compl. ¶ 7.) In May 2010, Kennel asked the Association to address a raw sewage backup problem. (*Id.* ¶¶ 11, 17.) The Association "employed a plumber to perform a task known as 'rodding the pipes,'" but the sewage backup problem was not solved. (*Id.* ¶¶ 18, 25.) Kennel employed its own plumber to determine the cause of the sewage backup, and Kennel submitted its plumber's report and estimate of repairs to the

---

[1] Kennel did not file an Answer. Cambridge filed a Motion for Default against Kennel, which was granted on June 19, 2012. (Dkt. No. 18.)

Association, but the Association "ignored" the report and failed to resolve the issue. (*Id.* ¶¶ 19, 23-25.)

The underlying *Kennel* Complaint brings a claim for breach of fiduciary duty/constructive fraud/actual fraud (Count I), in which it alleges that the Association owed a fiduciary duty to the unit owners and that the duty has been breached. (*Id.* ¶ 30.) Kennel brings a claim for declaratory relief (Count II) that the Association must take all steps necessary to repair or place the drainage pipes in the condominium, pursuant to Section 18.4 of the Illinois Condominium Property Act, 765 ILCS 606/1, *et. seq.* Kennel also brings a claim for unjust enrichment/conversion (Count III), in which it alleges that Travelers Insurance Company ("Travelers") forwarded $3,227.98 to the Association that was meant to reimburse Kennel for some of its damages but that the Association did not forward these funds to Kennel. (*Id.* ¶¶ 43-36.)

In connection with the *Kennel* Complaint, the Association and its managers tendered their defense to Cambridge, which tender Cambridge refused to accept. (Compl. ¶ 10.) Cambridge filed the present declaration action. In Count I of the Declaratory Complaint, Cambridge alleges that it has no duty to defend because the *Kennel* Complaint does not allege an "occurrence" as defined by the Cambridge Policy. In Count II of the Declaratory Complaint, Cambridge contends that it has no duty to defend the Managers, acting in their capacity as directors and officers of the Association, because the Condominium Endorsement excludes coverage for intentional misconduct.

## LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings permits a party to move for judgment after both the plaintiff's complaint and the defendant's answer have been filed. Fed. R. Civ. P. 12(c). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Piscotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). In ruling on a motion for judgment on the pleadings, the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 364 (7th Cir. 2000). "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

In determining whether an insurer has a duty to defend, a reviewing court must compare the allegations of the underlying complaint to the relevant terms of the insurance policy at issue. *Clarendon Am. Ins. Co. v. B.G.K. Security Services, Inc.*, 900 N.E.2d 385, 392 (Ill. App. Ct. 2008). "An insurer's duty to defend is much broader than its duty to indemnify its insured." *United Nat. Ins. Co. v. 200 North Dearborn Partnership*, No.1-10-0569, 2012 WL 5205626, at *3 (Ill. App. Ct. Oct. 22, 2012). "If the underlying complaint alleges facts within or potentially within the policy's coverage, the insurer's duty to defend arises even if the allegations are groundless, false or fraudulent." *Id.*

The "burden of proving that a claim falls within an exclusion" to an insurance policy falls on the insurer. *Hurst-Rosche Eng'rs. Inc. v. Commercial Union Ins. Co.*, 51

F.3d 1336, 1342 (7th Cir. 1995). An insurer can decline to defend its insured only if, "from the face of the complaint, the allegations are clearly outside the bounds of the policy coverage." *Nat'l Case Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010). The Court construes the complaint's allegations liberally in favor of the insured. *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005).

## ANALYSIS

### *No Duty to Defend (Count I)*

In Count I of the Declaratory Complaint, Cambridge alleges that it has no duty to defend because the *Kennel* Complaint does not allege an "occurrence" as defined by the Cambridge Policy. The Cambridge Policy provides, "This insurance applies . . . to 'bodily injury' and 'property damage' only if: The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" (Compl., Ex. A at 49.) The Cambridge Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 61.) "Property Damage" is defined in part as "[p]hysical injury to tangible property, including a resulting loss of use of that property." (*Id.*)

Cambridge argues the *Kennel* Complaint does not allege an "occurrence" because "[t]he Association's and its Managers' failure and refusal to perform certain actions is not an unexpected, unintended, and unusual event." (Dkt. No. 15 at 6.) Cambridge, relying

5

on *Aetna Cas. & Sur. Co. v. Freyer*, 411 N.E.2d 1157, 1159 (Ill. App. Ct. 1980),[2] recites the following definition of "accident": "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." *Id.* "The natural and ordinary consequences of an act do not constitute an accident." *Id.*

Defendants argue that the standard for determining whether an "occurrence" has been alleged is "the actor expected or intended the injury." (Dkt. No. 19 at 6 (quoting *Calvert Ins. Co. v. Western Ins. Co.*, 874 F.2d 396, 399 (7th Cir. 1989) (*Calvert*).) But an "[i]njury is 'expected' where the damages are not accomplished by design or plan, *i.e.*, not 'intended,' but are 'of such a nature that they should have been reasonably anticipated expected by the insured.'" *Calvert*, 874 F.2d at 399.

The *Kennel* Complaint's allegations demonstrate that Defendants were aware of the sewage backups. Kennel alleges that since May 2010, it "implored the Condo Association and its individual members to do something about the raw sewage backup problem." (*Kennel* Compl. ¶ 17.) Kennel alleges that it provided the Association with a report that "identified defects in the condominium unit's plumbing and drainage system that are the sources of the raw sewage backup," which was an "improperly sized fitting in a drainage pipe" that violated City of Chicago building code requirements. (*Id.* ¶¶ 20-23.) Defendants ignored the report and stated that "rodd[ing] the pipes" twice a year and placing chicken wire over an outside drain would solve the problem. (*Id.* ¶ 24.) More

---

[2] The parties agree that Illinois law governs this diversity action.

than a year passed since Defendants rodded the pipes, and Kennel's unit has been flooded with raw sewage on "several occasions," most recently twice in one week in July 2011. (*Id.* ¶¶ 11, 13.)

Defendants cite *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*, 126 F.3d 886 (7th Cir. 1997) (*Prisco*) and *Posing v. Merit Ins. Co.*, 629 N.E.2d 1179 (Ill. App. Ct. 1994) (*Posing*), in support of their argument that there was no "occurrence." However, both cases are distinguishable. *Prisco* involved an insurance policy that contained a similar definition of "occurrence" as the Cambridge Policy. *Prisco*, 126 F.3d at 890. A school sued an architectural firm, alleging that the firm was negligent in failing to discover the general contractor's work was defective and that its negligent certifications of the work resulted in the incorporation of defective components into the building. *Id.* at 891. The insurer denied coverage for the architectural firm, arguing that the underlying complaint did not allege an occurrence. *Id.* at 890-01. The Seventh Circuit, applying Illinois law, held that the complaint alleged an "occurrence," because the complaint alleged an expected or intended injury.

The *Prisco* court relied on *Posing*, "where a termite inspector was accused of negligently performing an inspection for the presence of [termites]." *Prisco*, 126 F.3d at 891. The insurer contended there was no "occurrence," but the *Posing* court held that the complaints alleged an occurrence because "at least one count in each of the underlying lawsuits alleges negligent conduct without alleging that [the termite inspector] 'expected' or 'intended' the pest infestation complained of." *Posing*, 629 N.E.2d at 1185; *see also*

7

*Philadelphia Indem. Ins. Co. v. 1801 W. Irving Park, LLC*, No. 11-cv-1710, 2012 WL 3482260, at *5-6 (N.D. Ill. Aug. 13, 2012) (focusing on whether conduct was negligent or intentional in determining whether there was an "occurrence").

By contrast here, the *Kennel* Complaint does not contain any allegations of *negligence*. To the contrary, Kennel alleges that it alerted the Defendants to the sewage backups, Defendants were provided a check from Travelers to reimburse Kennel for the damage, and Kennel provided Defendants with a report of defects and code violations in the plumbing system. *See Allstate Ins. Co. v. Lane*, 803 N.E.2d 102, 106-107 (Ill. App. Ct. 2003) (distinguishing *Prisco* and *Posing* because the allegations in the underlying complaint did not allege any negligent conduct). Accordingly, Cambridge's Motion for Judgment on the Pleadings is granted as to Count I, and Defendants' Motion for Judgment on the Pleadings is denied as to Count I: Cambridge has no duty to defend the Association or its Managers because the *Kennel* Complaint does not allege an "occurrence" as defined by the Cambridge Policy.

### *Duty to Defend Managers (Count II)*

In Count II, Cambridge contends that it has no duty to defend the Managers, acting in their capacity as directors and officers of the Association, because the Condominium Endorsement excludes coverage for intentional misconduct. The Condominium Endorsement in the Cambridge Policy provides coverage for damages arising out of any "wrongful act" committed during the Policy. (Ex. A-3 at 30.) A "wrongful act" is defined as "any negligent act, any error, omission or breach of duty of

Directors or Officers of the 'Named Insured' acting in their capacity as such." (*Id.* at 31-32.) The Policy provides an exclusion clause for wrongful acts that arise out of "dishonest, fraudulent, criminal, or malicious acts."

Cambridge argues that "negligent" modifies "act" as well as every term in the definition. Therefore, Cambridge argues, the Cambridge Policy "excludes coverage for the intentional misconduct as alleged through the *Kennel* action." (Dkt. No. 15 at 9.) Defendants argue that "negligent" does not modify the other terms in the definition.

Courts in this district that have interpreted similar definitions of "wrongful act" have held that "negligent" modifies "act" as well as every relevant term of the definition. *See TIG Ins. Co. v. Joe Rizza Lincoln-Mercury, Inc.*, No. 00-cv-5182, 2002 WL 406982, at \*9 (N.D. Ill. Mar. 14, 2002) ("It would be illogical for an endorsement to limit coverage to negligent acts, but to provide coverage for intentional omissions or errors."); *Benefit Systems & Services, Inc. v. Travelers Cas. and Sur. Co. of America*, 07-cv-3922, 2009 WL 1106948, at \*5 (N.D. Ill. Apr. 22, 2009) (same); *see also Golf Course Superintendents Ass'n of America v. Underwriters at Lloyd's, London*, 761 F. Supp. 1485, 1490 (D. Kan. 1991) ("It would be self-defeating to limit the definition of 'wrongful act' to negligent acts, but at the same time cover intentional errors or omissions.").

The *Kennel* Complaint alleges conduct that is based on intentional misconduct. Count I of the *Kennel* Complaint is the only count specifically alleged against the Managers. In Count I, Kennel alleges that the Managers breached their fiduciary duty by

9

failing and refusing to hire a plumber, failing and refusing to forward the funds from Travelers to Kennel, and failing to address defects in the condominium building. (*Kennel* Compl. ¶ 30.) Count III brings a claim of conversion and unjust enrichment against the Association, in which Kennel alleges that the Association "has not forwarded any of the funds received from Traveler's Insurance Group to Plaintiff" and is "exercising improper dominion and control over the funds." (*Id.* ¶¶ 44-45.) This Count is in effect alleged against the Managers, since the Association can only act through its Managers.

In *United Fire & Casualty v. Jim Madoof Realty, Inc.*, 435 N.E.2d 496, 498 (Ill. App. Ct. 1982), the underlying complaint alleged a breach of fiduciary duty against a real-estate broker. The real-estate broker tendered his demand to the defendant insurer, who denied coverage and refused to undertake the defense. The insurer filed a declaratory judgment action, seeking a declaration concerning coverage and its duty to defend under the policy. The court stated that the underlying complaint "must be read as a whole in order to assess its true nature" and that because "the factual allegations of the [underlying] complaint are premised upon . . . intentional fraud, and do not fall within the potential coverage of the insurance, [the insurer] has no duty to defend its insureds." *Id.*

When the *Kennel* Complaint is read as a whole, Kennel's claims for breach of fiduciary duty in Count I and conversion/unjust enrichment in Count III are premised on the Managers' alleged intentional misconduct. Because, as discussed above, the Cambridge Policy excludes coverage for intentional misconduct, Cambridge has no duty to defend the Managers. *See Twin City Fire Ins. Co. v. Somer*, 794 N.E.2d 958, 965 (Ill.

App. Ct. 2003) (holding that trial court did not err in holding that "all of the claims alleged in the [underlying] complaint were excluded under the policy because all of the factual allegations of the complaint are premised upon only one theory of recovery, that of intentional fraud and a conspiracy to commit fraud, and do not fall within the potential coverage of the insurance policy.").

Accordingly, Cambridge's Motion for Judgment on the Pleadings is granted as to Count II, and Defendants' Motion for Judgment on the Pleadings is denied as to Count II: Cambridge has no duty to defend the Managers, acting in their capacity as directors and officers of the Association, because the Condominium Endorsement excludes coverage for intentional misconduct.

## CONCLUSION

For the foregoing reasons, Cambridge's Motion for Judgment on the Pleadings [14] is granted. Defendants' Motion for Judgment on the Pleadings [19] is denied.

Date: 1-23-13

JOHN W. DARRAH
United States District Court Judge